IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2004

## DENNIS HARMON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Overton County**
**No. 5097     Lillie Ann Sells, Judge**

—————————

**No. M2004-00453-CCA-R3-PC - Filed June 8, 2005**

—————————

The petitioner, Dennis Harmon, appeals the dismissal of his petition for post-conviction relief, alleging that his counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered.  After an evidentiary hearing, the post-conviction court dismissed the petition, and the petitioner appealed.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Daryl A. Colson, Livingston, Tennessee, for the appellant, Dennis Harmon.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan and John H. Bledsoe, Assistant Attorneys General; William Edward Gibson, District Attorney General; and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The petitioner was indicted by the Overton County Grand Jury on two counts of rape of a child, four counts of aggravated sexual battery, and two counts of incest.  The victim was the petitioner's ten-year-old stepdaughter.  Thereafter, the petitioner pled guilty to one count of rape of a child and was sentenced to eighteen years in the Tennessee Department of Correction.

On November 8, 2002, the petitioner timely filed a pro se petition for post-conviction relief. In his petition for post-conviction relief, the petitioner alleged that he received ineffective assistance of counsel, specifically complaining that (1) counsel failed to inform the petitioner that the State did not have DNA evidence linking him to the crime; (2) counsel failed to request a preliminary hearing;

(3) counsel failed to file a motion to suppress his confessions; and (4) counsel failed to adequately consult with petitioner and properly investigate his case. The petitioner also complained that because of misrepresentations by counsel, his guilty plea was not knowingly and voluntarily entered.

At the post-conviction hearing, the petitioner testified that he was represented by two different public defenders at the trial level. The first attorney represented the petitioner through the grand jury proceeding, and the second attorney represented him following the grand jury proceeding through the guilty plea hearing. The petitioner asserted that he personally met with his first attorney three or four times. He said he asked his first attorney to request a preliminary hearing, but he did not have one. The petitioner said that he changed attorneys because he could not get along with the first attorney. He asked his first attorney and his second attorney if the State had medical evidence or DNA evidence incriminating him. He was led to believe that the State had obtained DNA evidence, and he knew a rape kit had been done on the victim. The petitioner stated that he first learned that there was no DNA or medical evidence after he was incarcerated and reviewed his file to prepare his post-conviction petition.

The petitioner testified that he gave a statement to Officer Tim Eberton. Officer Eberton then prepared a written statement, and the petitioner signed it. The petitioner stated that Officer Eberton promised him that if he signed the statement he would be given leniency. Officer Eberton advised the petitioner that he had spoken with the district attorney, and he hoped the petitioner would be able to reconcile with his wife, receive counseling "and be a family again." The petitioner testified that police also had an audiotaped statement but that the audiotaped statement did not match the written statement.

The petitioner said that he asked the trial court for a new attorney after the grand jury proceeding because he felt that his first attorney was "putting him off" and that he could not get along with the attorney. The petitioner testified that after receiving a new attorney, the second attorney met with him in person two or three times and talked with him on the telephone two or three times. He said that he had wanted to talk with his second attorney more often, but "a lady" in the attorney's office hung up on the petitioner when he called.

The petitioner stated that he asked his second attorney for a preliminary hearing, but counsel refused to follow through with the request. The petitioner wanted the preliminary hearing to discover the evidence the State had against him.

Further, the petitioner asserted that he asked his second attorney to file a motion to suppress his statements. He assumed that the motion had been filed, but he did not ask counsel about the results of the hearing. According to the petitioner, he was told that he did not need to be present at the hearing. The petitioner testified that police had taken an audiotaped statement from him as well as a written statement. The petitioner also asserted that police did not read him his rights prior to his confessions. Further, the petitioner stated that he signed a written waiver of his rights without reading the document. He maintained that during his hour-long confession, he asked for an attorney five or six times; however, the officer conducting the interview ignored the petitioner's request for

counsel and continued questioning him. The petitioner conceded that he signed several waiver forms and multiple pages of his statement. He acknowledged that the signatures showed no physical impairment.

The petitioner maintained that the written statement describing numerous incidents of digital and penile penetration of his step-daughter was prepared by Officer Eberton, and the petitioner merely signed it. The petitioner stated that he believed his written statement was consistent with the victim's version of events because the police officer who took his statement interviewed the victim immediately prior to taking the petitioner's statement. The petitioner said he did not read the written statement before he signed it.

The petitioner initially claimed that he did not make any of the statements included in the written confession; however, he later maintained that his mental state was impaired when he spoke with police, and he could not remember whether he made the statements. He admitted that there was a possibility that he had made statements inculpating himself.

The petitioner acknowledged that the police officer had not forced him to sign the confession, but he said that he was heavily medicated. The petitioner testified that he was a habitual abuser of prescription drugs. According to the petitioner, at the time of his 4:00 p.m. interview with Officer Eberton, he had taken 15 to 20 hydrocodone pills, 5 or 6 muscle relaxers, 5 or 6 Soma pills, and 4 or 5 Oxycontin pills, beginning around 11:00 a.m. He said that he did not tell the police officer he was on drugs at the time of the confession because it should have been obvious.

The petitioner insisted that he had wanted to go to trial, but his second attorney coerced him into pleading guilty. He said that his second attorney refused to go to trial with him. Additionally, the petitioner asserted that his first attorney advised him that he should plead guilty and that he could file a post-conviction petition if he was dissatisfied with counsel. The petitioner feared that the outcome would be detrimental if he proceeded to trial with an attorney who was reluctant to try his case. Therefore, the petitioner decided to accept a guilty plea. The petitioner conceded that his second attorney did not threaten or physically intimidate him into pleading guilty.

The petitioner stated that he lied to the trial court during his guilty plea hearing. Specifically, the petitioner said he lied when he told the court he did not have any witnesses he wanted to present, that he was satisfied with his counsel's performance, and that he was guilty. The petitioner said that he lied to the court because his second attorney had specifically instructed him regarding how he should answer each question asked by the court. The petitioner said that he thought he was supposed to lie to the court because his second attorney had told him the judge would not accept his plea if he did not give the answers provided by his second attorney. The petitioner stated that he never told his second attorney that some of the answers suggested by the attorney were false.

The petitioner's first attorney testified at the post-conviction hearing that he had handled hundreds of cases involving sexual offenses and that he had the knowledge and ability to assess the strengths and weaknesses of cases involving sexual offenses. Counsel said that the petitioner's

written and audiotaped statements were a major problem for the defense. Counsel opined that both statements were consistent with the victim's version of events. Counsel testified that he did not file a motion to suppress the statements because he could not find any grounds on which to base the motion. Specifically, counsel recalled that the petitioner's statements were clear, easily followed, and that he "basically told the story, rarely interrupted by the officer." Counsel said that he was confident that even if he had found a basis on which to have one statement excluded, the other statement would have been admissible. Counsel opined that at trial, the combination of one of the statements and the victim's testimony would have been sufficient to sustain multiple convictions.

Counsel said that he asked the trial court to remove him from the petitioner's case. When the court would not permit him to withdraw, he asked the second attorney, another assistant public defender, to assist with the petitioner's case. Counsel made the request because the petitioner would not acknowledge counsel's recommendations, and counsel felt that the petitioner lacked confidence in his abilities. Counsel stated that the petitioner sought his assurance that they would be successful at trial, and the petitioner became upset when counsel would not make such an assurance.

The petitioner's second attorney testified that he assumed control of the petitioner's case around December 2001, approximately five months prior to the guilty plea. Counsel said that he had consulted extensively with petitioner's first attorney, that he and the petitioner's first attorney had listened to the petitioner's audiotaped confession several times, and that he was pleased with the work the first attorney had done, particularly in reserving the preliminary hearing. However, counsel said that he chose not to request a preliminary hearing, because it was unnecessary. He believed that in order to show probable cause, the State needed only to have the victim testify and have the petitioner's confession read or played. Counsel admitted that the petitioner asked for a preliminary hearing, but counsel said he was not sure a preliminary hearing was constitutionally guaranteed after a grand jury indictment. Counsel explained that the petitioner had a habit of demanding that counsel do illogical or unnecessary things.

Counsel testified that he met with the petitioner at least six times prior to the entry of the guilty plea on April 22, 2002. Four of the meetings occurred in April, shortly before the trial date. He said that he was unaware of the petitioner's telephone calls being ignored by his office, but he knew that his secretary often refused to accept collect calls from the jail if he was out of the office. Counsel said that he was fully prepared to try the petitioner's case, and that until five days prior to the trial date, the petitioner had insisted on going to trial. Counsel said it would have been very easy to continue to trial, but he felt strongly that the petitioner would receive a better sentence if he pled guilty. Counsel denied that he ever refused to go to trial with the petitioner but stated that he advised the petitioner many times to accept the proposed plea agreement. Counsel told the petitioner that if the petitioner went to trial, he would likely be found guilty of two counts of rape of a child and receive a much longer sentence.

Counsel testified that he never told the petitioner that the State had DNA evidence linking him to the crimes. Counsel stated that he had received a letter from the petitioner in January 2002, acknowledging the State's lack of DNA evidence. The letter stated, "I feel that [sic] the wish to take

it to trial, that we make them scientifically prove rape and then prove it was me and they have no doc[tor] statements and they have no DNA."

Counsel said that there were two main problems with the petitioner's case. First, there was no clear way to keep the victim from testifying. Second, there were no legitimate grounds on which to exclude the petitioner's statements. Counsel testified that the petitioner repeatedly insisted that both he and the victim were untruthful in their statements to the police, but counsel did not believe he could prove that two people independently concocted the same lie.

Counsel testified that on the day of the guilty plea, he told the petitioner to listen to the trial court very carefully. Specifically, counsel testified that

> I probably said to him you better listen to [the judge's] questions because she's going to try to talk you out of this guilty plea, cause she wants to give you twenty five to fifty years, and so if you want to serve eighteen you had better listen very carefully and answer her questions correctly.

Counsel stated that he did not recall the petitioner telling him on the day of the plea that he wanted to go to trial. Counsel acknowledged that he informed the petitioner that he could file a post-conviction petition after the plea if he was not satisfied with the outcome. Counsel said he told the petitioner of his right to file for post-conviction relief because he knew that the petitioner had not been happy with him or his first attorney.

Captain Tim Emerton of the Livingston Police Department also testified at the post-conviction hearing. He explained that the petitioner's written and audiotaped confessions were taken at the same time. Captain Emerton asserted that the petitioner never asked for an attorney during his confessions.

After the hearing, the post-conviction court dismissed the petition for post-conviction relief, specifically crediting the testimony of counsel and discrediting the testimony of the petitioner. On appeal, the petitioner contests the post-conviction court's rulings.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. §40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v.

State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

On appeal, the petitioner has raised three specific complaints of ineffective assistance of counsel: (1) counsel were ineffective in failing to inform the petitioner that there was no DNA against him; (2) counsel were ineffective in failing to pursue a preliminary hearing after the petitioner specifically requested the hearing; and (3) counsel were ineffective in failing to file a motion to suppress the petitioner's confessions. Additionally, the petitioner argues that, due to alleged misrepresentations and improper inducements made to him by counsel, his guilty plea was not knowingly and voluntarily entered.

With respect to the petitioner's first complaint, we note that the post-conviction court specifically found that the petitioner "knew well in advance of the guilty plea that there was no DNA linking him to the crime and in spite of this knowledge, he decided to plead guilty." The record reveals that the petitioner acknowledged in writing to his plea counsel that he knew the State did not have medical evidence or DNA evidence. Additionally, at the post-conviction hearing the petitioner offered no evidence other than his own self-serving testimony that he was unaware of the lack of DNA evidence against him. At the conclusion of the hearing, the post-conviction court specifically credited the testimony of the petitioner's attorneys and discredited the petitioner's testimony on this issue. The evidence does not preponderate against the post-conviction court's findings.

Turning to the petitioner's second complaint, we conclude that the record is devoid of evidence demonstrating how the petitioner's case was prejudiced by a lack of a preliminary hearing. At the post-conviction hearing, the petitioner's attorneys testified that the preliminary hearing was reserved as a tactical advantage for plea negotiations and not for evidentiary reasons. The

petitioner's second attorney said that the State had provided open-file discovery and he did not think the preliminary hearing would result in additional information. Counsel's first attorney had waived the preliminary hearing and had reached an agreement regarding bond. The post-conviction court found "trial counsels' assessment to be both logical and reasonable under the facts of the case and further [found] that the petitioner has failed to show, what if anything, he could have gained by having a preliminary hearing following discovery at the trial level." The evidence does not preponderate against this finding. Therefore, we conclude that the petitioner failed to demonstrate that counsel was deficient or that he was prejudiced by any alleged deficiency.

Third, we turn to the petitioner's complaint that counsel should have filed a motion to suppress his confessions. The post-conviction court found that the petitioner had failed to prove that counsel was ineffective by failing to file a motion to suppress, commenting that the record "is completely devoid of any evidence that the confession was allocated as a result of violating the petitioner's rights." The post-conviction court observed that the

> petitioner presented no evidence whatsoever to support [the claim of ineffective assistance by failure to file a motion to suppress] other than his own self-serving testimony on the issue at this hearing. The fact that he did not offer the audio taped statement at the post-conviction hearing further supports trial counsel's decision.

Our review of the record supports the post-conviction court's finding that there was no evidence to show that the petitioner's confessions were obtained in violation of his constitutional rights. The petitioner gave inconsistent and improbable testimony at the post-conviction hearing concerning his impairment during his confession. The post-conviction court specifically discredited the petitioner's testimony. Further, the petitioner failed to produce the audiotaped confession at the post-conviction hearing. We agree with the post-conviction court that petitioner has failed to show that his attorneys were deficient by failing to file a motion to suppress his statements.

Finally, the petitioner argues that his counsel made improper inducements or misrepresentations resulting in a guilty plea that was not voluntary or knowing. Specifically, the petitioner complains that he was misinformed by counsel as to the existence of DNA evidence linking him to the crime, and his attorney coerced him into accepting the guilty plea. As we noted earlier, the post-conviction court found that the petitioner was aware of the lack of DNA evidence. Moreover, the petitioner has not proven any misrepresentations on the part of counsel. Additionally, the post-conviction court noted:

> On the day the petitioner plead he was personally observed by the court, conversed with the court in a logical, straight forward manner, and entered the plea without hesitation. The court found [the petitioner] had entered his plea knowingly and voluntarily. Upon careful review of the transcript, the court can find no indication of anything otherwise. . . . The court finds that petitioner's testimony

that his guilty plea was entered under force or coercion or threat by this trial counsel or anyone else is not credible. . . . The court finds that the negotiated plea was reasonable and extremely favorable to the petitioner in light of the evidence outlined at the plea proceeding and post-conviction hearing.

We conclude that the petitioner has failed to prove that his guilty plea was not knowingly or voluntarily entered. This issue is without merit.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE